UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| REMI BOLLINGER, *o.b.o Ronald Bollinger (deceased)* | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:19 CV 124 RWS ) |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Remi Bollinger, on behalf of Ronald Bollinger (deceased), brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying Ronald Bollinger's application for a period of disability and disability insurance benefits. Because the Commissioner's decision is supported by substantial evidence from the record as a whole, I will affirm the Commissioner's decision.

**I. Application for Social Security Disability Benefits**

Ronald Bollinger alleged he became disabled as of January 30, 2016.  Tr. at 159.  On July 14, 2016, he protectively filed for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 401 et seq. The Commissioner denied Bollinger's application on August 31, 2016. Tr. at 92-98.

Bollinger requested a hearing before an Administrative Law Judge, which took place by video on April 23, 2018. Tr. at 50-81, 99-100. On August 13, 2018, the ALJ issued a decision denying benefits. Tr. at 26-40. Bollinger passed away on March 16, 2019, and on April 24, 2019, his daughter Remi Bollinger filed to continue pursuing benefits on his behalf. Tr. at 11. On June 4, 2019, the Appeals Council denied Remi Bollinger's request for review. Tr. at 1-6. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Plaintiff's recitation of facts set forth in the Statement of Material Facts, as the Commissioner admits them. See Pl.'s Statement of Material Facts, ECF No. 11-1; Def.'s Resp., ECF No. 12-1. Plaintiff's Statement of Material Facts, with Defendant's additional clarification, provides a fair and accurate description of the relevant record before me. I will discuss additional facts as needed to address the Parties' arguments.

## III. Legal Standards

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical

or mental impairment that would result in death, or which has lasted, or could be expected to last, for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A). To determine whether a claimant is disabled, the Commissioner evaluates his claims through five sequential steps. 20 CFR § 404.1520; Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (describing the five-step process).

Steps one through three require that the claimant prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Step four requires the Commissioner to consider whether the claimant retains the residual functioning capacity ("RFC") to perform his past relevant work ("PRW"). Id. at § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at step five to show the claimant retains the RFC to perform other jobs that exist in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

In reviewing the ALJ's denial of Social Security disability benefits, my role is to determine whether the Commissioner's findings comply with the relevant

legal requirements and are supported by substantial evidence on the record as a whole. Pate-Fires, 564 F.3d at 942. "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the ALJ's decision, I may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because I would have decided the case differently. See Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011).

Moreover, if, after reviewing the entire record, it is possible to draw two inconsistent positions and the ALJ has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I must "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (internal citation omitted).

## IV. ALJ's Decision

In his written decision, the ALJ found that Bollinger had not engaged in substantial gainful activity since January 30, 2016. Tr. at 31. The ALJ also found that Bollinger had a severe impairment, cerebellar ataxia. Tr. at 31-32. However,

4

he determined that Bollinger's impairment did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 32.

The ALJ ultimately determined Bollinger had the RFC to perform a full range of work at all exertional levels, but with non-exertional limitations to frequent balancing, handling, and fingering.  Tr. at 32.  The ALJ further determined that Bollinger was capable of performing past relevant work as a salesperson and as a factory worker, as neither of those occupations require the performance of work-related activities precluded by Bollinger's RFC.  Tr. at 35-36.  Therefore, the ALJ found that Bollinger was not disabled from his alleged onset date through the date of the decision.  Tr. at 36.

**V. Discussion**

Plaintiff argues that remand is required because the ALJ failed to assess a proper RFC supported by substantial evidence.  She asserts that the ALJ improperly weighed the medical opinion evidence, failed to incorporate significant medical findings into his limitations, and improperly discounted Ronald Bollinger's subjective complaints.

    **a.  Medical Opinion Evidence**

Plaintiff contends that the ALJ's RFC assessment is not supported by the record, because the ALJ ignored medical findings and gave significant weight to a 2016 consultative examination by Dr. Matthew Karshner while giving little weight

5

to subsequent 2017 and 2018 examinations by Ronald Bollinger's treating physician, Dr. Randall Stahly.

### 1. Dr. Karshner's Opinion

Plaintiff asserts that Dr. Karshner's opinion is outdated and does not constitute substantial evidence to support the RFC.  She argues the ALJ should have obtained additional opinion evidence to evaluate whether Ronald Bollinger's condition had deteriorated after Dr. Karshner's evaluation.

The ALJ is responsible for "fully and fairly" developing the record, including the medical record.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).  If "a crucial issue is underdeveloped" in the record, the ALJ has the duty to obtain additional information.  Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006).  If the medical records presented to the ALJ are sufficient for him to determine whether a claimant is disabled, the ALJ is not required to order additional medical examinations and tests.  See Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994); 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Although Dr. Karshner's consultative examination predates additional evidence from Dr. Stahly, Dr. Karshner conducted his examination after Bollinger's alleged disability onset date.  At the time of his consultative examination in 2016, Bollinger was already alleging limitations in lifting, standing, walking, squatting, bending, speaking, and using his hands.  Tr. at 222.  Despite

6

Bollinger's subjective complaints, Dr. Karshner found in 2016 that Bollinger had an atypical gait, but no balance compromise. Tr. at 270-71.  He found that Bollinger was able to hop, squat, and return from a squatting position.  Tr. at 271. He also found that Bollinger had "some unusual speech," but retained the "ability to perform and sustain work related functions including . . . speaking." Id.  When Bollinger testified to the ALJ nearly two years later, he alleged similar limitations as the ones he alleged at the time of Dr. Karshner's evaluation.  Tr. at 59-68.

While Dr. Stahly opined that Bollinger had a degenerative disease and significantly more marked restrictions than did Dr. Karshner, there is no objective medical evidence in the record supporting the claim Ronald Bollinger experienced a marked change in condition in the period following Dr. Karshner's 2016 consultative examination. Neither of the two sets of medical records from after Dr. Karshner's examination documented new objective tests reflecting functional limitations.  Tr. at 281, 287-88.  The records indicate that Bollinger was not diagnosed with new conditions, did not suffer a traumatic health event, and did not introduce any new subjective complaints.  Tr. at 222, 281, 287.  Accordingly, Dr. Karshner's report was not rendered outdated by the 2017 and 2018 records, and the ALJ properly considered Dr. Karshner's report and opinion as consistent with the evidence from the record as a whole.  See Hight v. Shalala, 986 F.2d 1242,

7

1244 n. 1 (8th Cir. 1993) (explaining that opinions of consulting physicians may constitute substantial evidence).

### 2. Dr. Stahly's Opinion

Dr. Stahly was Ronald Bollinger's treating physician. "The opinion of a treating physician is accorded special deference under the social security regulations" and is "normally entitled to great weight." Vossen v. Astrue, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)); 20 C.F.R. § 404.1527(c)(2). This is because a treating physician is

> likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

However, a treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight only if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Id. If the opinions of a consultative examiner and treating physician are inconsistent, "the ALJ is charged with the responsibility of resolving [the] conflicts." Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008). An ALJ must look to a number factors in determining what weight to accord a medical opinion or record, including the

8

length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.  See 20 C.F.R. § 404.1257(c).  An ALJ must consider the factors listed in 20 C.F.R. § 404.1257(c), but he need not discuss each factor.  Failure to discuss each factor does not mean the ALJ did not consider them.  C.f. Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 1998).

Should an ALJ find the treating physician's opinion is not controlling or determinative, the ALJ must provide "good reasons . . . for the weight [given to the] treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2); Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).  Inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion.  Goff v. Barnhart, 421 F.3d 785, 790-91 (8th Cir. 2005).

Here, the ALJ weighed the medical opinions of the consultative examiner, Dr. Karshner, and Bollinger's treating physician, Dr. Stahly, and determined that Dr. Stahly's opinions should be afforded "little weight" because (1) Dr. Stahly directly opined on the issue of whether "the claimant is totally and/or permanently disabled," which is an issue "reserved solely to the Commissioner;" and (2) Dr. Stahly's opinions are "not consistent with the record as a whole."  Id.  Specifically, the ALJ clarified (i) Dr. Stahly describes a ten-year treatment relationship, but the

9

record "include[s] only a few pages" of treatment records; (ii) Dr. Stahly's treatment notes document no "testing that would be expected in such a claimed disorder;" and (iii) the tests Dr. Stahly relied on in crafting his medical opinion were "contradicted during the consultative examination." Id. The ALJ's stated reasons are consistent with the requirements of 20 C.F.R. § 404.1527(c), and the ALJ's findings are supported by substantial evidence in the record.

The record shows that neither Dr. Stahly's office nor Ronald Bollinger was able to provide any documentation of a treatment relationship predating the 2017 examination. In the 10-year relationship, the treatment notes reflect that Dr. Stahly saw Bollinger only twice. Tr. at 281, 287-88. The ALJ also found that Dr. Stahly's treatment notes document "no testing that would be expected in such a claimed disorder." Tr. at 34; see also 20 C.F.R. § 404.1527(c)(2)(ii) (explaining that the "kinds and extent of examinations and testing the [physician] performed or ordered from specialists and independent laboratories" are relevant to the weight to be given the treating physician's opinion). Dr. Stahly's treatment notes from the 2017 and 2018 examinations reveal that there were no MRI or CT scans performed.

Finally, the ALJ discounted Dr. Stahly's opinion because it was inconsistent with other medical evidence from the record. Tr. at 34 (finding that the balance tests relied upon by Dr. Stahly were contradicted during the consultative

10

examination).  An ALJ may discount the opinion of a treating physician when his opinion is inconsistent with other medical evidence.  See Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000) ("We have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician [] where other medical assessments are supported by better or more thorough medical evidence . . .") (internal citations omitted).

Even granting that Bollinger identifies evidence from the record that supports Dr. Stahly's opinion and detracts from the ALJ's RFC determination, I cannot reverse the determination simply because I "would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion."  See Igo v. Colvin, 839 F.3d 724, 728 (8th Cir. 2016) (citing Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014)); Goff v. Barnhart, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.") (citing Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001)).  Considering the conflicting evidence in the record, the ALJ's determination was within the "available zone of choice."  See Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) (affirming the ALJ's decision to afford limited credibility to a treating physician whose opinion was inconsistent with the medical evidence as a whole). Accordingly, I find that

11

there is substantial evidence in the record for the weight the ALJ afforded Dr. Karshner's and Dr. Stahly's opinions.

### b. Ronald Bollinger's Subjective Testimony

Plaintiff next contends that the ALJ improperly discounted Ronald Bollinger's testimony and did not give proper weight to his subjective statements regarding his symptoms. Plaintiff identifies evidence in the record that she contends support each of Ronald Bollinger's subjective complaints.

As a general matter, decisions regarding the weight to assign to a claimant's testimony "are the province of the ALJ." Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016). An ALJ may disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See, e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering subjective complaints, an ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), but the decision does not need to include discussion of how each Polaski factor supports the ALJ's determination.[1] Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (citing Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004)).

---

[1] The Eighth Circuit has recognized that "Social Security Ruling 16-3p eliminates use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020). SSR 16-3p applies to Bollinger's case, "but it largely changes terminology rather than the substantive analysis to be applied." Id.

The ALJ found that Bollinger's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. at 34.  For example, the ALJ found that, given the severity and intensity of the Bollinger's alleged symptoms, it was notable that the record showed Bollinger only sought yearly checkups with his treating physician.  Tr. at 34; see Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms").  The record also indicates a 15-month gap between Bollinger's alleged disability onset date and his first recorded visit for treatment with Dr. Stahly.  Tr. at 31, 33.  Dr. Stahly's narrative letter alleging a ten-year relationship is not considered objective medical evidence.  See 20 C.F.R. § 404.1529(c)(1)-(2) (defining objective medical evidence as evidence "obtained from the application of medically acceptable clinical and laboratory techniques.").  Bollinger also complained of frequent falls, but there is no evidence treatment for any resultant injuries.  Tr. at 74.  Additionally, in contrast with Bollinger's reports about his difficulty walking, balancing, and using his hands, the ALJ cited Dr. Karshner's 2016 test results and Dr. Stahly's report from April 2018, both of which indicated Bollinger had full strength in all his extremities.  Tr. at 33-34.

13

The ALJ further explained that Bollinger's credibility was undermined by his reported daily activities. Tr. at 34. A claimant's daily activities may be considered in judging the credibility of complaints. See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered a plaintiff's daily activities before concluding that the plaintiff's subjective complaints of pain were not credible); Goff, 421 F.3d at 792 ("Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish[es] h[is] credibility.") (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). The record showed that Bollinger was able to live on his own; he was able to maintain his personal care; he was able to put on clothes; he was able to shower unaccompanied; he could drive; he was able to complete simple household chores like laundry; he was able to cook meals in the microwave and conventional oven; he was able to accompany his sister to family dinners, grocery shopping, and occasionally to church. Tr. at 55-56, 59, 61-64. As a result, I find that the ALJ's evaluation of Bollinger's subjective complaints was supported by substantial evidence in the record.

## VI. Conclusion

When reviewing an adverse decision by the Commissioner, my task is to determine whether the decision is supported by substantial evidence on the record as a whole. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). For the reasons set

out above, substantial evidence supported the ALJ's decisions regarding the weight he accorded to the opinions of Dr. Stahly and Dr. Karshner, as well as the weight accorded to Bollinger's subjective complaints. The ALJ's determination of the resulting RFC was also supported by substantial evidence in the record. I will therefore affirm the decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and Plaintiff's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

                                                        RODNEY W. SIPPEL
                                                        UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2020.